# EXHIBIT A

**MADISON COUNTY**

OFFICE OF
**PAM CARTER**
CLERK AND MASTER
CHANCERY COURT

100 East Main Street, Suite 200     Phone (731) 423-6030     988-3091
Fax (731) 988-3825

*Jackson, Tennessee*
38301-6294

DATE: 8-20-15

TO: John Anderson

FROM:

COMMENTS: Johnny Cole

_____ PAGES INCLUDING COVER PAGE

IN THE CHANCERY COURT OF MADISON COUNTY, TENNESSEE

| | | |
|---|---|---|
| UNIVERSITY SCHOOL OF JACKSON, | | |
| Plaintiff, | FILED | |
| v. | TIME: 3:20 | Cause No. 73360 |
| HANOVER AMERICAN INSURANCE COMPANY, | JUL 13 2015 PAM CARTER CLERK & MASTER BY: _____ DEPUTY CLERK | JURY DEMANDED |
| Defendant. | | |

## COMPLAINT

COMES NOW the Plaintiff, University School of Jackson, by and through counsel, and submits the following for its Complaint against Hanover American Insurance Company:

### PARTIES AND JURISDICTION

1. University School of Jackson (hereafter "USJ") is a non-profit corporation with its principal office located at 232 McClellan Road, Jackson, Tennessee. USJ is a private college preparatory school that educates children from Pre-Kindergarten through the 12th Grade.

2. Defendant, Hanover American Insurance Company ("Hanover"), is an insurance company engaged in the insurance business in the State of Tennessee, including Madison County. Hanover's principal office is located at 440 Lincoln Street, Worcester, Massachusetts. Hanover is a property and casualty subsidiary of Hanover Insurance Group.

3. This Complaint originates as the result of a monetary loss to USJ caused by employee theft that was discovered on or around March 26, 2014, for which USJ made a claim to Hanover.

## FACTS

4. Jessica Pinkerton served as USJ's Financial Services Manager and payroll clerk during the period of December 11, 2008 through March 26, 2014.

5. On or about March 26, 2014, USJ discovered that Ms. Pinkerton had stolen a significant amount of money from USJ over the years. In summary, Ms. Pinkerton electronically deposited funds into her personal account without USJ's permission. USJ had no prior knowledge of the theft/embezzlement.

6. USJ hired an independent accounting firm, Alexander Thompson Arnold, PLLC ("ATA") to determine the amount stolen by Ms. Pinkerton. ATA performed a detailed analysis of all activity, and determined that Ms. Pinkerton misappropriated funds which resulted in a loss to USJ totaling at least $613,350 (the "Loss").

7. At all times relevant hereto, USJ was a party to an insurance contract bearing Policy No. ZZ5 9609502 01 whereby Hanover agreed to insure USJ against embezzlement and employee theft (the "Policy"). The Policy was first issued to USJ effective July 1, 2012 through June 30, 2013 and then was renewed for the period of July 1, 2013 to June 30, 2014. The Policy is incorporated herein by reference as if set forth verbatim.

8. The Policy contained two coverage forms applicable to the Loss: (1) a Commercial Crime Coverage Form, bearing form number CR 00 20 05 06 (the "Crime Form"); and (2) an Educational Institution Special Broadening Endorsement, bearing form number 411 0549 02 11 (the "Education Endorsement"). The dispute that culminated in this lawsuit involves the relationship of the policy limits for the Crime Form and the Education Endorsement as applicable to the Loss.

### The Crime Form

9.  The Crime Form provides $50,000 of coverage for "employee theft." This coverage was purchased by USJ for an additional premium of $133.00.

10. The Crime Form provides:

   **A. Insuring Agreements**

   Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.**:

The Crime Form then lists the different "Insuring Agreements," which include: (1) Employee Theft; (2) Forgery or Alteration; (3)) Inside the Premises- Theft of Money and Securities; (4) Inside the Premises – Robbery or Safe Burglary of Other Property; (5) Outside the Premises; (6) Computer Fraud; (7) Funds Transfer Fraud; and (8) Money Order and Counterfeit Money.

11. The particular "Insuring Agreement" in the Crime Form that is applicable to the Loss is the "Employee Theft" insuring agreement, which provides:

   **1. Employee Theft**

   We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons. For the purposes of this Insuring Agreement, "theft" shall also include forgery.

12. Each of the separate "Insuring Agreements" in the Crime Form have separate limits, depending on which "Insuring Agreements" are purchased and the amount of coverage that is selected for each. For example, in USJ's policy, the "Crime Declaration" reveals that USJ

purchased "Employee Theft" coverage with limits of $50,000 (at a premium of $133.00), "Outside the Premises" coverage with limits of $10,000 (at a premium of $8.00), and "Inside the Premises – Robbery or Safe Burglary of Other Property" coverage with limits of $10,000 (at a premium of $77.00).

13. Section B. of the Crime Form sets out the limits, as follows:

**B. Limit of Insurance**
The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

14. By its plain terms and obvious meaning, the restrictive language limiting the coverage to the highest of the limits available was intended to keep claimants from making multiple claims for the same event under different coverages within the Crime Form. The "Insuring Agreements" referenced in the Crime Form refers to the listed coverages in the Crime Form (employee theft, forgery, fraud, etc.), not insurance provided outside of the Crime Form.

15. The Crime Form also provides that it covers an "'occurrence' taking place at any time which is 'discovered' by [USJ] during the Policy Period shown in the Declarations." "Occurrence" is defined in the Crime Form as "an individual act, the combined total or all separate acts whether or not related, or a series of acts whether or not related committed by an 'employee' . . . during the Policy Period, before such Policy Period, or both." As relevant to the Loss, the theft by Jessica Pinkerton was discovered in March 2014, which is within the policy term of July 1, 2013 to July 1, 2014. Accordingly, subject to the policy limits of $50,000, all of the theft is covered, even that theft which occurred prior to the policy period at issue.

4

### The Education Endorsement

16. The Education Endorsement provides $100,000 of *additional* insurance coverage for employee theft, and was purchased by USJ for an additional premium of $800.

17. The Education Endorsement provides:

> Under **Section C. Limits of Insurance** of Building and Personal Property Coverage Form CP 0010, the following is added:
>
> The limits applicable to the Coverages included in this endorsement may either be in addition to or included within the applicable Limits of Insurance. For application of the limits, refer to each coverage within this endorsement.
>
> . . .
>
> The coverages in this endorsement amend the coverage provided under the Building and Personal Property Coverage Form, Causes of Loss – Special Form, Business Income (and Extra Expense) Coverage Form through new coverages and substitute coverage grants. These coverages are subject to the provisions applicable to these forms, except as provided for and amended within this endorsement. If any of the property covered by this endorsement is also covered under any provisions of the policy of which this endorsement is made a part or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay is the Limit of Insurance applying to the coverage you select.
>
> . . .
>
> **8. Employee Theft including ERISA Compliance.**
> Under **Section A. Coverage, 4. Additional Coverages** of Building and Personal Property Coverage Form CP 0010, the following is added:
>
> **h. Employee Theft including ERISA Compliance.**

(1) We will pay for loss or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee" . . .

For the purposes of this Additional Coverage, "theft" shall also include "forgery".

(7) The amount payable under this Additional Coverage is additional insurance.

18. With respect to the period in which the employee theft coverage of the Education Endorsement applies, it provides, "We will pay only for loss you sustain through acts committed or events occurring during the policy period shown in the Declarations and 'discovered' by you: (a) during the policy period . . .." Accordingly, the Education Endorsement differs from the Crime Form in that the Education Endorsement limits its coverage to those losses that occur during the policy period of July 1, 2013 to the date of discovery (March 2014), whereas the Crime Form covers losses that occurred both before and after July 1, 2013.

### The Claim and Response by Hanover

19. Upon discovery of the Loss, USJ promptly reported same to Hanover and made claim in the amount of $150,000 pursuant to the provisions of the Crime Form and the Education Form as outlined above. Hanover assigned a claim number of 15-00298082.

20. In response to the claim, Hanover requested that USJ provide a breakdown of the theft for the policy years July 1, 2012 through July 1, 2013 and July 1, 2013 through March 23, 2014 (the date of discovery). USJ requested that ATA perform that task, which revealed the following:

        7/1/12 – 6/30/13    $169,976.52

        7/1/13 – 3/26/14    $132,884.03

21. By letter dated September 15, 2014, USJ provided the above breakdown to Hanover as requested. USJ also submitted a notarized proof of loss form to Hanover on September 15, 2014, making a claim against the Policy in the amount of $150,000.

22. By letter dated September 17, 2014, Hanover partially denied USJ's claim. Specifically, Hanover agreed to pay USJ $100,000 under the Education Endorsement, but declined to pay the $50,000 owed under the Crime Form.

### The Interplay between the Crime Form and the Education Endorsement

23. In making its decision to deny any coverage under the Crime Form, Hanover cited a provision in the Education Endorsement that provides as follows: "If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part or if more than coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverage to apply to that loss." Based on this language, Hanover wrongly concluded that the Education Endorsement and the Crime Form cannot be "stacked" and that $100,000 was the maximum amount owed under the Policy.

24. The reference to "property covered by this endorsement" in the Education Endorsement would necessarily not include the property that was stolen prior to July 1, 2013 because the Education Endorsement only covers the theft that occurred during the policy period in which it was discovered (July 1, 2013 to July 1, 2014). On the other hand, the Crime Form covers theft occurring before and during the policy period when it is discovered. Thus, there is no "stacking" but rather there are two separate coverages that apply to different covered property. The Education Form by definition does not apply to losses that occurred prior to July 1, 2013, but the Crime Form does. As a result, the limiting language that says the insured must

choose "if any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of" is inapplicable because the "property covered by the [Education Form]" is not covered by the Crime Form.

25. Hanover's reliance on the language in the Education Endorsement is further flawed because the Education Endorsement only amends the coverage provided under the "Building and Personal Property Coverage Form, Causes of Loss – Special Form," not the Crime Form. The Building and Personal Property Coverage Form, Causes of Loss – Special Form" offers no coverage for employee theft except as modified by the Education Endorsement. As such, the Education Endorsement does not impact the limits provided by the Crime Form in any way.

26. Several rules of interpretation are triggered by this dispute, as follows:

- The language of the policy must be taken and understood in its plain, ordinary and popular sense. Where language is susceptible to more than one reasonable interpretation, the language is ambiguous. If such ambiguous language limits the coverage of the insurance policy, that language must be construed in favor of the insured. In determining the "plain, ordinary and popular" meaning of language, courts may refer to dictionary definitions. *CBL & Associates Management, Inc. v. Lumbermens Mut. Cas. Co.*, 2006 WL 2087625, 6 (E.D.Tenn. 2006); *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000).

- Language in a policy is ambiguous if it is capable of more than one reasonable interpretation. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). A contract is ambiguous only if it is of uncertain meaning and may fairly be understood in more ways than one. *Rogers v. First Tennessee Bank Nat. Ass'n*, 738 S.W.2d 635 (Tenn.Ct.App. 1987).

- If possible, all provisions in the contract should be construed in harmony with each other to promote consistency and to avoid repugnancy between the various provisions. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

- In Tennessee, exceptions, exclusions, and limitations in insurance policies must be construed against the insurance company and in favor of the insured. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). The entire policy, however, including insuring clauses and exceptions thereto, must be

8

read as a whole. *Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 782 (6th Cir. 1986). Further, exceptions should not be construed so narrowly as to defeat their evident purpose. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998).

27. In this case, the intent of the parties and the reasonable expectation of USJ was that the Policy would provide them $150,000 in coverage for employee theft. This intent is clearly evidenced by the fact that Hanover separately charged USJ $133.00 for the employee theft coverage provided in the Crime Form and $800 for the employee theft coverage provided by the Education Endorsement. Hanover's interpretation of the Policy results in the absurdity that USJ was paying an additional premium for employee theft coverage in the Crime Form with no increase in coverage over and above that provided by the Education Endorsement. USJ specifically purchased an additional $50,000 of employee theft coverage via the Crime Form with the intent of having a total of $150,000 in employee theft coverage ($100,000 via the Education Endorsement and $50,000 via the Crime Form). Hanover's flawed interpretation ignores that obvious fact.

28. The parties' intent is also made clear in the Education Endorsement, in which it is plainly stated that the $100,000 in employee theft coverage offered by the Education Endorsement is "additional insurance." Accordingly, the employee theft coverage in the Education Endorsement is in addition to the coverages that may be found elsewhere in the package policy, including the Crime Form.

## Compliance with Policy Terms and Conditions

29. Pursuant to the Policy, USJ paid an annual premium to Hanover in exchange for insurance coverage. USJ paid the required premiums at all times relevant to this Complaint. Specifically, in addition to other premiums, USJ paid $133 for $50,000 of employee theft

9

coverage under the Crime Form and $800 for $100,000 of employee theft coverage under the Education Endorsement.

30. USJ promptly reported the Loss to Hanover, and fulfilled all of the duties after the Loss that were imposed upon it by the Policy to the satisfaction of Hanover.

31. As it relates to the Loss, there is no applicable exclusion or condition that would allow Hanover to refuse to pay $150,000 to USJ as a result of the Loss.

32. Despite the fact that USJ has fulfilled all duties imposed upon it by Hanover, is at no fault in this matter, and has submitted a compensable claim, Hanover has partially denied USJ's claim for insurance proceeds, paying only $100,000 of the $150,000 claim.

33. Hanover's refusal to pay USJ the amounts owed to it for the Loss is without justification and constitutes a breach of contract.

34. Hanover's refusal to pay the money and benefits due and owing USJ under the Policy has caused USJ to seek legal counsel and to initiate this Complaint to recover the insurance proceeds to which it is entitled.

## CAUSES OF ACTION

### Count 1 - Breach of Contract

35. The allegations contained in Paragraphs 1-34 of this Complaint are incorporated herein by reference as if set forth verbatim.

36. The Policy issued by Hanover was a binding contract, and is supported by valid consideration.

37. Hanover is in total material breach of the Policy and is liable to USJ in the maximum amount allowed by the Policy for the Loss. Specifically, Hanover's breach of contract includes its failure to pay $150,000 to USJ as a result of the Loss.

08/20/2015 09:52 (FAX) P.011/016

38. As a result of Hanover's breach of contract, USJ has sustained substantial compensable losses for the amounts claimed under the Policy.

39. After giving credit for prior payments, Hanover is still liable to USJ in the amount of $50,000 and USJ seeks damages in that amount.

WHEREFORE, as a result of the foregoing, USJ would respectfully request that this Honorable Court award a judgment against Hanover as follows:

A. For compensatory damages not to exceed $50,000.00;

B. For all costs incurred by USJ as a result of this action;

C. For pre and post-judgment interest; and

D. For such other further and general relief as this Court deems just and equitable.

Respectfully submitted,

GILBERT RUSSELL McWHERTER
SCOTT BOBBITT PLC

J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
*Attorney for Plaintiff*
341 Cool Springs Blvd, #230
Franklin, Tennessee 37067
Telephone: (615) 354-1144
Facsimile: (731) 664-1540

## COST BOND

This Firm stands as surety for costs in this matter.

11

**SUMMONS**  CAUSE. NO. 73360

**STATE OF TENNESSEE**
**IN THE CHANCERY COURT OF MADISON COUNTY, TENNESSEE**

TO: HANOVER AMERICAN INSURANCE COMPANY.
c/o Commissioner of Insurance
500 James Robertson Parkway
Nashville, TN 37243-0565

You are summoned to appear and defend a civil action filed against you entitled:

**UNIVERSITY SCHOOL OF JACKSON**
v.
**HANOVER AMERICAN INSURANCE COMPANY**

which has been filed in Chancery Court, Madison County, Tennessee, and your defense must be made within thirty (30) days from that date this summons is served upon you. You are further directed to file your defense with the Clerk of the court and send a copy to J. Brandon McWherter, Gilbert Russell McWherter Scott & Bobbitt PLC, Plaintiffs' Attorney, whose address is 341 Cool Springs Blvd., Suite 230, Franklin, TN 37067. In case of your failure to defend this action by the above date, judgment by default can be rendered against you for the relief demanded in the complaint.

ISSUED: 7-14, 2015.

SANDRA BURNHAM, CLERK AND MASTER

By: _____
Deputy Clerk & Master

**RETURN OF SERVICE**

I hereby certify and return, that on the _____ day of _____, 2015, I served this summons together with a copy of the complaint herein as follows: _____

_____

_____

Sheriff

_____

Deputy Sheriff

# GILBERT | RUSSELL | MCWHERTER SCOTT | BOBBITT PLC

341 Cool Springs Boulevard, Suite 230 | Franklin, TN 37067 | 615.354.1144 (T)

July 1, 2015

Madison County Chancery Court  
Pam Carter, Clerk & Master  
100 E. Main St. Suite 200  
Jackson, TN 38301

**Via Federal Express**

Re: *University School of Jackson v. Hanover American Insurance Company*

Dear Ms. Carter:

Enclosed, please find a Complaint and Summons that I request to be filed in your office with regard to the above referenced matter. I have also enclosed a check made payable to the clerk's office in the amount of $227.00 to cover the filing fee as well as a separate check made payable to the Commissioner of Insurance in the amount of $15.00 for service of the Summons upon Defendant, Hanover American Insurance Company in this matter. Once these documents have been filed I would ask that you please return a stamp "Filed" copy to me in the enclosed self-addressed, stamped envelope.

Thank you in advance for your assistance with this matter.

Yours very truly,

GILBERT RUSSELL McWHERTER  
SCOTT & BOBBITT PLC

J. Brandon McWherter

JBM/kk  
Enclosures

CHATTANOOGA OFFICE: 100 W. Martin Luther King Blvd, Suite 504 | Chattanooga, TN 37402 | 423.499.3044 (T)  
MEMPHIS OFFICE: 6000 Poplar Ave. Suite 250 | Memphis, TN 38119 | 901.766.1868 (T)  
JACKSON OFFICE: 101 N. Highland Ave | Jackson, TN 38301 | 731.664.1340 (T)  
www.gilbertfirm.com

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
Jerald.E.Gilbert@tn.gov

FILED
TIME: 10:26 A.M. _____ P.M.

July 17, 2015

JUL 31 2015

PAM CARTER
CLERK & MASTER
BY: _____
DEPUTY

Hanover Insurance Company
800 S. Gay Street, Suite 2021, C/O C T Cor
Knoxville, TN 37929
NAIC # 22292

Certified Mail
Return Receipt Requested
7012 3460 0002 8950 0881
Cashier # 21134

Re: University School Of Jackson V. Hanover Insurance Company

Docket # 73360

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served July 17, 2015, on your behalf in connection with the above-styled proceeding. Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Madison County
    100 East Main Street, #200
    Jackson, Tn 38301

**SUMMONS**

CAUSE. NO. 13360

**STATE OF TENNESSEE**
**IN THE CHANCERY COURT OF MADISON COUNTY, TENNESSEE**

TO: HANOVER AMERICAN INSURANCE COMPANY.
c/o Commissioner of Insurance
500 James Robertson Parkway
Nashville, TN 37243-0565

You are summoned to appear and defend a civil action filed against you entitled:

**UNIVERSITY SCHOOL OF JACKSON**
v.
**HANOVER AMERICAN INSURANCE COMPANY**

which has been filed in Chancery Court, Madison County, Tennessee, and your defense must be made within thirty (30) days from that date this summons is served upon you. You are further directed to file your defense with the Clerk of the court and send a copy to J. Brandon McWherter, Gilbert Russell McWherter Scott & Bobbitt PLC, Plaintiffs' Attorney, whose address is 341 Cool Springs Blvd., Suite 230, Franklin, TN 37067. In case of your failure to defend this action by the above date, judgment by default can be rendered against you for the relief demanded in the complaint.

ISSUED: 7-14, 2015.

SANDRA BURNHAM, CLERK AND MASTER

By: _____
Deputy Clerk & Master

**RETURN OF SERVICE**

I hereby certify and return, that on the ____ day of _____, 2015, I served this summons together with a copy of the complaint herein as follows: _____

_____
Sheriff

_____
Deputy Sheriff